AO 106 (Rev. 06/09) Application for a Search Warrant



**FILED**

JUN 1 3 2019

CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
### for the
### Southern District of California

In the Matter of the Search of
*(Briefly describe the property to be searched
or identify the person by name and address)*

Android LG Cellular Phone, IMEI 353712097895281

)
)
)
)
)
)
)

Case No. **19MJ2457**

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*
See Attachment A.

located in the _____ **Southern** _____ District of _____ **California** _____ , there is now concealed *(identify the person or describe the property to be seized):*
See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. 952 and 960 | Importation of Controlled Substances |

The application is based on these facts:
See Affidavit of HSI Special Agent Jeffrey D. Rabine, which is hereby incorporated by reference and made part hereof.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Jeffrey D. Rabine, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: **JUNE 13, 2019**

_____
*Judge's signature*

City and state:  San Diego, CA

Hon. Andrew G. Schopler U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEARCH WARRANT

I, Jeffrey D. Rabine, Special Agent with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations, hereby state as follows:

### INTRODUCTION

1.     I make this affidavit in support of an application for a warrant to search an Android LG Cellular Phone, IMEI 353712097895281, hereinafter referred to as the "**Target Device**," as described in Attachment A (incorporated herein by reference).

2.     The **Target Device** was seized from Defendant Luis Suchilt-Calzada on or about March 14, 2019, when he was arrested for the importation of methamphetamine, in violation of Title 21, United States Code, Sections 952 and 960, and is currently in the possession of Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, California 92101.

3.     I seek authority to search the **Target Device** for, and to seize evidence of, federal crimes, specifically, the importation of methamphetamine in violation of Title 21, United States Code, Sections 952 and 960, as described in Attachment B (incorporated herein by reference), for the time period February 14, 2019, through March 14, 2019.

4.     Based on the information below, there is probable cause to believe that the **Target Device**, described in Attachment A, contains evidence, described in Attachment B, of the aforementioned crimes.

5.     The information contained in this affidavit is based upon my experience, training, and consultation with other federal law enforcement agents. The evidence and information contained herein was developed from interviews and my review of documents and evidence related to this case. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all of the information known by me or other federal agents regarding this investigation, but only contains those facts believed to be necessary to establish probable cause. Dates, times, and amounts are approximate.

1

# EXPERIENCE AND TRAINING

6.     I am a Special Agent currently employed with the United States Department of Homeland Security, Immigration and Customs Enforcement, Homeland Security Investigations (HSI). I have been with HSI since July 2017. I currently am assigned to the Contraband Smuggling Group in San Ysidro, California. In my role, I primarily investigate violations of the United States Code that occur at the border between Mexico and the United States, including narcotics smuggling. Prior to my job with HSI, I worked as a Police Officer with the San Diego Community College Police Department from July 2002 to July 2017. I also was employed in the Federal Air Marshal Service from April 2002 to July 2002, and worked as a United States Border Patrol Agent from March 1997 to April 2002. Additionally, I hold a Bachelor's Degree in Criminal Justice from National University and a Master of Public Administration Degree from American Military University.

7.     I am a graduate of the Criminal Investigator Training Program, and the Immigration and Customs Enforcement Special Agent Training Program at the Federal Law Enforcement Training Center (FLETC). During the course of my training at FLETC, I have received training in identifying various controlled substances and conducting Title 21 controlled substances investigations, including the gathering of evidence, preservation of a crime scene, and use of electronic evidence. Prior to becoming an HSI Special Agent, I also participated in several advanced training classes, including multiple courses on criminal contraband smuggling in connection with my other professional jobs. I also am cross-designated by the United States Drug Enforcement Administration (DEA) to conduct narcotics investigations and enforce the provisions of the Controlled Substance Act.

8.     In the course of my duties, I have worked as a case agent directing narcotics-related investigations involving the acquisition, importation, transportation, and distribution of controlled substances into and through the Southern District of California. I also have participated in the execution of numerous search warrants; initiated and

2

1  executed numerous arrests for narcotics-related offenses, including the importation of

2  controlled substances; and interviewed defendants, witnesses, and informants regarding the

3  illegal trafficking of controlled substances.  Through these experiences, I have gained a

4  working knowledge and insight into the operational habits of narcotics smugglers with

5  particular emphasis on those who attempt to import narcotics into the United States from

6  Mexico through the San Diego international ports of entry.

7        9.    In preparing this affidavit, I have conferred with other agents and law

8  enforcement personnel who are experienced in the area of narcotics investigations, and the

9  opinions stated below are shared by them.  Further, I have personal knowledge of the

10  following facts, or have had them related to me by persons mentioned in this affidavit.

11        10.   Through the course of my training, investigations, and conversations with

12  other law enforcement personnel, I am aware that it is a common practice for narcotics

13  smugglers to work in concert with other individuals and to do so by utilizing cellular

14  telephones to coordinate with co-conspirators in order to further their criminal activities.

15  This is particularly true in cases involving distribution amount quantities of controlled

16  substances, such as methamphetamine.  Narcotics smugglers and their organizations often

17  use cellular telephones, in part, because these individuals believe law enforcement is

18  unable to track the originating and destination phone numbers of calls placed to and from

19  cellular telephones.  I also am aware that load drivers smuggling controlled substances

20  across the border are often in telephonic contact with co-conspirators immediately prior to,

21  during, and following the crossing of the narcotic load.

22        11.   Based upon my training and experience as a Special Agent, and consultations

23  with law enforcement officers experienced in narcotics smuggling investigations, I am also

24  aware that:

25        a.    Drug smugglers will use cellular telephones because they are mobile and they

26             have instant access to telephone calls, text, web, and voice messages.

27

28
                3

b.     Drug smugglers will use cellular telephones because they are able to actively monitor the progress of their illegal cargo while the conveyance is in transit.

c.     Drug smugglers and their accomplices will use cellular telephones because they can easily arrange and/or determine what time their illegal cargo will arrive at predetermined locations.

d.     Drug smugglers and their co-conspirators will use cellular telephones to communicate with load drivers who transport their narcotics and/or drug proceeds across the border, including to direct drivers to synchronize an exact drop off and/or pick up time of their illegal cargo.

e.     Drug smugglers will use cellular telephones to notify or warn their accomplices of law enforcement activity to include the presence and posture of marked and unmarked units, as well as the operational status of checkpoints and border crossings.

f.     The use of cellular telephones by drug traffickers tends to generate evidence that is stored on the cellular telephones, including, but not limited to emails, text messages, photographs, audio files, call logs, address book entries, IP addresses, social network data, and location data.

12.     Based upon my training and experience, and consultation with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I also have learned that cellular telephones can and often do contain electronic records, phone logs and contacts, voice and text communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone. Specifically, I have learned, through my training, education, that searches of cellular telephones associated with narcotics smuggling yield evidence:

a.     Tending to indicate efforts to import methamphetamine or other federally controlled substances from Mexico into the United States;

4

b. Tending to identify accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

c. Tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

d. Tending to identify travel to or presence at locations involved in the importation methamphetamine or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. Tending to identify the user of, or persons with control over or access to, the subject cellular/mobile telephone; and,

f. Tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

13. On March 14, 2019, at approximately 1:40 a.m., Defendant, a citizen of Mexico, applied for permission to enter the United States from Mexico through the Otay Mesa, California Port of Entry. Defendant was the driver, registered owner, and sole occupant of a 2004 Nissan Altima bearing California license plates (the vehicle).

14. In pre-primary, Defendant stated that he was on his way to work, and a canine alerted to the interior of the rear driver's side door during a vehicle inspection. A Customs and Border Protection Officer (CBPO) utilized a flat head screw driver to pry open the panel on the interior of the rear passenger's side door and noticed plastic packages wedged inside. The vehicle was referred to secondary inspection.

15. In secondary, the Z-Portal x-ray imaging system revealed anomalies in the rear doors and spare tire. A total of 99 packages weighing approximately 48.70 kg were

1  removed from the vehicle's rear doors, dashboard, spare tire, and gas tank.  The packages

2  tested positive for methamphetamine.

3      16.    Defendant was placed under arrest, and the **Target Device** was seized incident

4  to Defendant's arrest.  The **Target Device** also was searched at that time; however, the

5  machine in use at the Port to download those contents has limited capabilities, including

6  limitations regarding the downloading of data from certain applications and the

7  downloading of some deleted data. I request this search warrant in order to conduct a fuller

8  download that may provide a more complete picture of the contents of the **Target Device**.[1]

9      17.    Post-arrest, Defendant denied knowledge of the narcotics.

10      18.    Based upon my experience and investigation in this case, I believe that the

11  **Target Device** contains evidence of violations of Title 21, United States Code, Sections

12  952 and 960, Importation of a Controlled Substance.  Specifically, I believe that Defendant,

13  as well as other persons as yet unknown, were involved in an ongoing conspiracy to import

14  methamphetamine or other federally controlled substances into the United States.  Based

15  on my experience investigating narcotics smugglers, I also believe that Defendant may

16  have used the **Target Device** to coordinate with co-conspirators regarding the importation

17  and distribution of controlled substances, and to otherwise further this conspiracy both

18  inside and outside of the United States.

19      19.    Further, based upon my experience and training, consultation with other law

20  enforcement officers experienced in narcotics trafficking investigations, and all the facts

21  and opinions set forth in this affidavit, I believe recent calls made and received, telephone

22  numbers, contact names, electronic mail (e-mail) addresses, appointment dates, text

23  messages, pictures and other digital information are stored in the memory of the **Target**

24  **Device** which may identify other persons involved in narcotics trafficking activities.

25  Accordingly, based upon my experience and training, consultation with other law

26

27  [1]    I am not relying on data obtained from the **Target Device** to establish probable cause

28  here.

6

1  enforcement officers experienced in narcotics trafficking investigations, and all the facts
2  and opinions set forth in this affidavit, I believe that information relevant to the narcotics
3  trafficking activities of Defendant, such as telephone numbers, made and received calls,
4  contact names, electronic mail (e-mail) addresses, appointment dates, messages, pictures,
5  audio files, videos and other digital information are stored in the memory of the **Target**
6  **Device**.

7      20.    Finally, I am aware that drug conspiracies require detailed and intricate
8  planning to successfully evade detection by law enforcement.  In my professional training
9  and experience, this may require planning and coordination in the days and weeks prior to
10  the event.  Additionally, co-conspirators are often unaware of the subject's arrest and will
11  continue to attempt to communicate with the subject after the arrest to determine the
12  whereabouts of their valuable cargo.  Given this, I respectfully request permission to search
13  the **Target Device** for the time period February 14, 2019, through March 14, 2019.

14                            **METHODOLOGY**

15      21.    It is not possible to determine, merely by knowing the cellular telephone's
16  make, model and serial number, the nature and types of services to which the device is
17  subscribed and the nature of the data stored on the device.  Cellular devices today can be
18  simple cellular telephones and text message devices, can include cameras, can serve as
19  personal digital assistants and have functions such as calendars and full address books and
20  can be mini-computers allowing for electronic mail services, web services and rudimentary
21  word processing.  An increasing number of cellular service providers now allow for their
22  subscribers to access their device over the internet and remotely destroy all of the data
23  contained on the device.  For that reason, the device may only be powered in a secure
24  environment or, if possible, started in "flight mode" which disables access to the network.
25  Unlike typical computers, many cellular telephones do not have hard drives or hard drive
26  equivalents and store information in volatile memory within the device or in memory cards
27  inserted into the device.  Current technology provides some solutions for acquiring some
28

7

1 of the data stored in some cellular telephone models using forensic hardware and software.

2 Even if some of the stored information on the device may be acquired forensically, not all

3 of the data subject to seizure may be so acquired.  For devices that are not subject to

4 forensic data acquisition or that have potentially relevant data stored that is not subject to

5 such acquisition, the examiner must inspect the device manually and record the process

6 and the results using digital photography.  This process is time and labor intensive and may

7 take weeks or longer.

8      22.    Following the issuance of this warrant, I will collect the **Target Device** and

9 subject it to analysis.  All forensic analysis of the data contained within the telephone and

10 its memory cards will employ search protocols directed exclusively to the identification

11 and extraction of data within the scope of this warrant.

12      23.    Based on the foregoing, identifying and extracting data subject to seizure

13 pursuant to this warrant may require a range of data analysis techniques, including manual

14 review, and, consequently, may take weeks or months. The personnel conducting the

15 identification and extraction of data will complete the analysis within ninety (90) days,

16 absent further application to this court.

## CONCLUSION

18      24.    Based on all of the facts and circumstances described above, I believe that

19 probable cause exists to conclude that Defendant used the **Target Device** to facilitate

20 violations of 21 U.S.C. §§ 952 and 960.  I also believe that probable cause exists to believe

21 that evidence of that illegal activity committed by Defendant and other co-conspirators

22 continues to exist on the **Target Device**.

23 //

24 //

25 //

26 //

27 //

28

1    25.    WHEREFORE, I request that the court issue a warrant authorizing law
2 enforcement agents and/or other federal and state law enforcement officers to search the
3 item described in Attachment A, and seize the items listed in Attachment B, using the
4 methodology described above.

5        I swear the foregoing is true and correct to the best of my knowledge and belief.

7    _____
     Jeffrey D. Rabine
8    Special Agent
9    Homeland Security Investigations

11 Subscribed and sworn to before me this  13th  day of June, 2019.

12 _____
13 HON. ANDREW G. SCHOPLER
   United States Magistrate Judge
14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
                                    9

## ATTACHMENT A
PROPERTY TO BE SEARCHED

The property to be searched is:

   Android LG Cellular Phone,
   IMEI 353712097895281

Currently in the possession of Homeland Security Investigations, 880 Front Street, Suite 3200, San Diego, California 92101.

## ATTACHMENT B
### ITEMS TO BE SEIZED

Authorization to search the **Target Device** described in Attachment A includes the search of disks, memory cards, deleted and remnant data, slack space, and temporary or permanent files contained on or in the cellular/mobile telephone for evidence described below. The seizure and search of **Target Device** shall follow the search methodology described in the attached affidavit submitted in support of the warrant.

The evidence to be seized from **Target Device** will be electronic records, communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of February 14, 2019, through March 14, 2019:

a.     tending to indicate efforts to import methamphetamine or other federally controlled substances from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services –such as email addresses, IP addresses, and phone numbers – used to facilitate the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in the importation of methamphetamine or other federally controlled substances from Mexico into the United States;

d.     tending to identify travel to or presence at locations involved in the importation of methamphetamine or other federally controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the **Target Device**; and

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

**All believed to be evidence of violations of Title 21, United States Code, §§ 952 and 960.**